## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**BRITTANY CROSSETT,**

|                          |                    |
|--------------------------|--------------------|
| Plaintiff,               | Case No.        -cv |
| v.                       | Hon.               |

**SNOWS BAR & Grill,**

Defendants.

_____/

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
Jocelyn C. Flemons (P85448)
*Attorneys for Plaintiff*
7700 Second Ave, Suite 335
Detroit, Michigan 48202
(313) 964-4454 Phone
(313) 964-4490 Fax
richardmack@millercohen.com
jocelyn@millercohen.com

_____/

There is no other pending or resolved
civil action arising out of the same transaction
or occurrence as alleged in the complaint.

_____*/s/Jocelyn Flemons*_____
Jocelyn Flemons

## **COMPLAINT AND JURY DEMAND**

**NOW COME** Plaintiff, by and through her attorneys, MILLER COHEN,

P.L.C., and for her Complaint against Defendant, she states as follows:

## INTRODUCTION

1.      As a young mother denied work rights and subjected to violence, Plaintiff summoned the courage to speak up about her work rights and report the violence she faced to police.

2.      As a result, Plaintiff was denied accommodations at work and terminated by the Defendant for contacting the police.

3.      The present action is brought to redress the unlawful employment practices of the Defendant against the Plaintiff, including Defendant's discrimination against Plaintiff because of her sex/pregnancy and for Defendant's retaliation leading up to and including her unlawful termination.

4.      Plaintiff seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre-and post-judgement interest as remedies for Defendant's violation of her rights.

## PARTIES

5.      Plaintiff, Brittany Crossett, was employed by the Defendant from August 2019 until December of 2023.  Plaintiff is a resident of Brimely, Michigan and worked for the Defendant, Snows Bar and Grill, located in Mackinac County, Michigan during all relevant times in this action.

6.      Defendant, Snows Bar and Grill, is a business in the City of Cedarville,

2

in the County of Mackinac and in the State of Michigan.

## JURISDICTION

7.      This Court has original jurisdiction over Plaintiff's claims arising under

PUMP ACT 29 USCS § 218d  and  29 USCS §  215(a)(3).[1]

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over

Plaintiff's state law claims.

9.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) based

upon Defendant's residency and that a substantial part of the events or omission

giving rise to the claims occurred within Mackinac County in the Western District

of Michigan.

## GENERAL ALLEGATION

10.    Plaintiff began working for Defendant in August of 2019.

11.    Plaintiff was hired by Defendant to work as a bartender and server.

12.    Some of Plaintiff's work included making drinks, taking orders, serving

food, handling cash, and cleaning tables.

13.    Kasey Spencer was the Manager at Defendant.

14.    Amy Salter was and is one of the owners of Defendant.

---

[1] While this lawsuit alleges PUMP Act violations, Plaintiff will bring a charge before the Equal Employment Opportunity Commission alleging a violation of Gender and sex discrimination in violation of Title VII. Specifically, Plaintiff alleges that the employer discriminated against her on the basis of her gender and sex and refused to allow her the reasonable accommodation of breaks. Once a right to sue letter has been issued, Plaintiff intends to amend her Complaint to add these claims as additional counts.

15.   Plaintiff reported directly to Kasey Spencer (hereinafter Manager Kasey) and Amy Salter (hereinafter Owner Salter).

16.   Around August 2022 Plaintiff became pregnant.

17.   Plaintiff began her maternity leave around March of 2023.

18.   Plaintiff returned from maternity leave around May of 2023.

19.   Upon returning from maternity leave, Plaintiff was subjected to pervasive discrimination and harassment due to her sex by Defendant.

20.   Upon returning to work, Plaintiff's work hours were from about 2:00 p.m. to 10:00 p.m., five to six days per week.

21.   When she returned from maternity leave, Plaintiff told Manager Kasey and Owner Salter of her need to breast pump every few hours.

22.   However, Defendant's management refused to permit Plaintiff to take the necessary breaks needed for her to pump milk. Defendant would refuse to accommodate PLAINTIFF and force PLAINTIFF to wait until after her shift.

23.   Specifically, when Plaintiff would ask Manager Kasey for a break Manager Kasey would deny her and state her only options were to accommodate Plaintiff by removing Plaintiff from the schedule or for Plaintiff to pump after work.

24.   However, Plaintiff, being a new mother, was not able to limit her pumping to before and after her eight-hour shift.

4

25.   Needing her job and being unable to wait until after her eight-hour shift to pump Plaintiff would put on her wearable pump and pump her breast milk while she continued to work.

26.   The breast milk would leak through her shirt.

27.   Plaintiffs' movements were also limited because pumping requires a mother to position her body in a certain manner for the milk to flow. This meant Plaintiff had to work carefully.

28.   Nevertheless, as a determined mother Plaintiff would pump in this manner whenever she could.

29.   Plaintiff was only able to pump milk in the described way when Manager Kasey was away.

30.   When Plaintiff asked for breaks she was berated by Kasey in-person, through phone calls, and via text messages.

31.   One text message from Manager Kasey said "I told you you [sic] would have to pump before and after your shift … not during! And most definitely not in the kitchen or waiting tables." (Exhibit 1)

32.   And while Plaintiff never pumped in the kitchen or waiting area this is one of the many examples of how Defendant's Management berated Plaintiff simply for trying to pump her breast milk.

33.    In another text message, Kasey told Plaintiff "It's my business and job to make things simple and done correctly. You think I want to fn [sic] deal with this shit cuz I don't … pumping needs to be done in the bathroom or car." (Exhibit 2)

34.    Knowing that Plaintiff was forced to pump milk while working, Owner Amy, who caught her on occasion doing it, would not stop her, but she would laugh at her.

35.    There was no attempt by the Defendant or its management to provide breaks or make accommodations for Plaintiff that would allow Plaintiff to pump her breast milk.

36.    As a result, plaintiff had to forego her lactation specialist-recommended pump schedule and breast pump when she could, which was always well beyond the recommended period.

37.    Due to Defendant's management failure to provide Plaintiff with reasonable breaks to pump Plaintiff got clogged ducts on three separate occasions.

38.    A clogged duct also known as a plugged milk duct occurs when a breast feeding mom has a milk duct that has not drained properly and pressure builds up behind the plugged duct, and the tissue around it gets irritated.

39.    A clogged duct creates a tender, sore lump or knot in the breast.

6

40.     Plaintiff was ostracized by management and her colleagues and forced to work in a hostile environment just because she wanted to breast feed her baby.

41.     Around this same time, Justin Skipper (hereinafter Justin), who was an employee and frequent customer at Defendant, was harassing Plaintiff.

42.     Justin was also the boyfriend of Manager Kasey.

43.     The following paragraphs outline some of the things Justin did to Plaintiff.

44.     In August of 2023, and without Plaintiffs permission or knowledge, Justin posted a private photo of Plaintiff online.

45.     When Plaintiff was informed that the photo had been posted on Facebook she reported it to Bay Mills police.

46.     Bay Mills police is a tribal police force located in Bay Mills.

47.     Bay Mills said that because the picture was taken on state land they were turning over the complaint to the State of Michigan Police.

48.     Plaintiff was then put in contact with Detective Sergeant Jeffery D. Erickson, of the Chippewa County Sheriff's Office, and Plaintiff reported Justin's illegal act.

49.     Following this Plaintiff became afraid of Justin and requested that Manager Kasey not schedule them to work together.

50.     Despite Plaintiffs pleas, Manager Kasey refused to schedule Plaintiff in a way that would allow her not to work with Justin.

51.     Plaintiff also requested that Owner Salter change her schedule and she too refused to change Plaintiff's schedule.

52.     As a result, Plaintiff was forced to work with Justin, but Plaintiff tried to keep her distance from Justin while she worked.

53.     If Justin was in the back Plaintiff would work in the front, and if Justin was in the front Plaintiff would work in the back.

54.     Despite Plaintiff trying to keep her distance, Defendant's employee Justin continued to harass Plaintiff.

55.     In September of 2023, Justin stole Plaintiff's car and slashed Plaintiff's tires.

56.     Plaintiff reported Justin's actions to state police officer Detective Sergeant Jefferey D. Erickson.

57.     It was around this time that Justin left a voicemail on Plaintiff's phone threatening to kill Plaintiff.

58.     Plaintiff reported the threat to State police officer Detective Sergeant Jefferey D. Erickson.

59.     Plaintiff also informed Manager Kasey and Owner Salter about Justin's threat on her life.

8

60.    Plaintiff again requested not to be scheduled to work with Justin.

61.    However, Defendant's management team would NOT change the schedule.

62.    Manager Kasey, who was in a relationship with Justin at the time, told Plaintiff that "we are all adults" and Plaintiff needed to get over it.

63.    Manager Kasey also informed Plaintiff that she and Justin drove to work together so she would not schedule Justin to work on a separate shift because Justin had to work when Manager Kasey was working.

64.    As a result of Plaintiff's complaints to state police, Justin was arrested on about December 21, 2023.

65.    On December 20 Plaintiff received a text message from Kasey Asking Plaintiff "WTF DID YOU DO !!!!!!!" (Exhibit 3)

66.    In response, Plaintiff said "what are you talking about?" (Exhibit 3)

67.    Kasey replied "WITH THE POLICE." (Exhibit 3)

68.    Fearing Kasey's response Plaintiff said "What?" and "Nothing." (Exhibit 3)

69.    The next day on about December 21, 2023, Justin was arrested and Kasey again texted Plaintiff.

9

70.   Kasey sent a text message telling Plaintiff "And it's war!" with a praying hand and smiling face. (Exhibit 4)

71.   Plaintiff responded, "What's war??" (Exhibit 4)

72.   Kasey replied "Who is this Bye Bitch!" (Exhibit 4)

73.   On about December 23, 2023, Manager Kasey removed Plaintiff from Defendant's work schedule.

74.   Plaintiff reached out to Owner Salter and told Owner Salter that Plaintiff had been removed from the schedule.

75.   However, Owner Salter did nothing to get Plaintiff back to work.

76.   On about January 7, 2024, and after Plaintiff had repeatedly asked Owner Salter to do something about her being removed from the schedule, Plaintiff stated "I don't like the unfairness and the retaliation Amy. It's been 3 weeks since I've worked there … this is 100% retaliation." (**Exhibit 5**)

77.   Nevertheless, Owner Salter did nothing and allowed the discrimination and retaliation to continue.

78.   Plaintiff was never placed back on the schedule and was terminated.

79.   As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

80.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, Tips, benefits and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

81.   Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

82.   Plaintiff brings these legal claims and seeks all relief allowable under the law.

## COUNT I

## VIOLATIONS OF PROVIDING URGENT MATERNAL PROTECTIONS ACT 29 U.S.C. § 218(d)

83.   Plaintiff, Brittany Crossett, repeats every allegation made in the above paragraphs of this complaint.

84.   The Providing Urgent Maternal Protections ("PUMP") Act requires employers provide "reasonable break time" for their employees to pump for up to one year after the birth of their child."

85.   Defendant violated Plaintiff's rights under the PUMP Act by failing to provide reasonable break time for Plaintiff to "express breast milk for her

nursing child for 1 year after the child's birth each time she had a need to express the milk."

86.   The PUMP Act also requires employers to provide "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk."

87.   The events as set forth herein took place within one year of the birth of Plaintiff's child.

88.   Defendants failed to provide reasonable space and break time for Plaintiff to express breast milk.

89.   Defendant knew or should have known that not providing breaks for pumping were unreasonable under the circumstances.

90.   Defendant knew or should have known that the suggested locations for pumping were unreasonable under the circumstances.

91.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered damages including but not limited to: lost wages, lost employment benefits, emotional distress, attorneys fees as allowed by statute and liquidated damages as allowed by statue.

[TEXT CONTINUED NEXT PAGE]

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A.     Grant her all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B.     Order appropriate injunctive relief requiring the Defendant to immediately implement all necessary corrective measures, such as reinstatement, mandatory training of all supervisory personnel and effective complaint process for discrimination, to end the illegal discrimination described in the allegations above;

C.     Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D.     Grant all such further relief as shall meet equity and good conscience.

**COUNT II**
**VIOLATIONS OF PROVIDING URGENT MATERNAL PROTECTIONS ACT**
**RETALIATION**

92.     Plaintiff, Brittany Crossett, hereby incorporates by reference all previous paragraphs

as though fully set herein.

93.   Defendant retaliated against Plaintiff for complaining to management.

94.   Defendant further retaliated against Plaintiff by write-ups and/or terminating her from her position in direct violation of the PUMP Act.

95.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages including but not limited to: lost wages, lost employment benefits, emotional distress, attorneys fees as allowed by statute and liquidated damages as allowed by statue.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A.   Grant Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, and other damages;

B.   Order appropriate injunctive relief requiring the employer to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and effective complaint process for discrimination, to end the illegal discrimination described in the allegations above;

C.   Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D.    Grant all such further relief as shall meet equity and good conscience.

## COUNT III

## WHISTLEBLOWERS' PROTECTION ACT

96.   Plaintiff incorporates by reference all preceding paragraphs.

97.   Plaintiff stated in good faith that she would report suspected violations of the law, rules or regulations, promulgated by the State of Michigan and the federal government when she reported harassment and violence she suffered.

98.   The Michigan State Police is a public body as defined under the WPA.   Plaintiff made her report to the police. In doing so, Plaintiff engaged in protected activity for which she could not be discharged or caused to suffer other adverse employment action under Section 2 of the WPA, MCL 15.262.

99.   In violation of the WPA, however, Defendants took adverse employment action against Plaintiff, ultimately leading to her termination in whole or in substantial part on account of Plaintiff's activity that is protected by the WPA described above.

100.  As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages including but not limited to: lost wages, lost employment benefits, emotional distress, attorneys fees as allowed by statute and liquidated damages as allowed by statue.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A.   Grant Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, and other damages;

B.   Order appropriate injunctive relief requiring the employer to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and effective complaint process for discrimination, to end the illegal discrimination described in the allegations above;

C.   Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D.   Grant all such further relief as shall meet equity and good conscience.

## COUNT IV
## TERMINATION IN VIOLATION OF PUBLIC POLICY

101.   The above-stated paragraphs are restated by reference as if fully plead herein.

102.   Plaintiff Brittany Crossett was an at-will employee at Defendant.

103.   As described above, Plaintiff made reports to police regarding one of Defendant's employees.

104.    The Defendant, through its management, removed Plaintiff from the schedule and ultimately terminated her because of report to the police.

105.    Plaintiff's actions described above violated Michigan law against termination in violation of public policy.

106.    Defendant suffered substantial damages as a direct and proximate result of Plaintiff's actions.

107.    Defendant's damages exceed $25,000.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A.    Grant Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, and other damages;

B.    Order appropriate injunctive relief requiring the employer to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and effective complaint process for discrimination, to end the illegal discrimination described in the allegations above;

C.    Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D.    Grant all such further relief as shall meet equity and good conscience.

Respectfully submitted,

**MILLER COHEN PLC**

By: */s/ Jocelyn Flemons*
  Richard G. Mack, Jr. (P58657)
  Jocelyn A Flemons (P85448)
  *Attorneys for Plaintiffs*
  7700 Second Ave, Suite 335
  Detroit, Michigan 48202
  (313) 964-4454 Phone
  (313) 964-4490 Fax
  richardmack@millercohen.com
  jocelyn@millercohen.com

Dated:      March 21, 2024

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**BRITTANY CROSSETT,**

                        Plaintiff,                    Case No.

v.                                        Hon.

**SNOWS BAR & Grill,**

                        Defendants.

_____/

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
Jocelyn C. Flemons (P85448)
*Attorneys for Plaintiff*
7700 Second Ave, Suite 335
Detroit, Michigan 48202
(313) 964-4454 Phone
(313) 964-4490 Fax
richardmack@millercohen.com
jocelyn@millercohen.com


_____/

## <u>DEMAND FOR TRIAL BY JURY</u>

    **NOW COME** Plaintiff, **Brittay Crossett**, by and through her attorneys,

**MILLER COHEN, P.L.C.,** and hereby demand for a trial by jury, for all issues so

triable.


[SIGNATURES NEXT PAGE]

19

Respectfully submitted,

**MILLER COHEN PLC**

By: */s/ Jocelyn Flemons*
    Richard G. Mack, Jr. (P58657)
    Jocelyn A Flemons (P85448)
    *Attorneys for Plaintiffs*
    7700 Second Ave, Suite 335
    Detroit, Michigan 48202
    (313) 964-4454 Phone
    (313) 964-4490 Fax
    richardmack@millercohen.com
    jocelyn@millercohen.com

Dated:      March 21, 2024